**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK CHRISTIAN,<br>*Plaintiff*,<br>v.<br>MARKWAYNE MULLIN., *et al.*,<br>*Defendants.* | Civil Action No. 26-1428 (RDM) |

**MEMORANDUM OPINION**

Under the Immigration and Nationality Act ("INA"), a citizen of the United States "may file a petition," referred to as a "Form I-130 petition," with the United States Citizenship and Immigration Service ("USCIS") requesting recognition of a foreign national family member, including a spouse, as an "immediate relative." 8 U.S.C. § 1154(a)(1). If "the facts stated in the petition are true," the immediate relative is "eligible for preference" in obtaining a visa to immigrate to the United States. *Id.* § 1154(b). The Adam Walsh Act ("AWA"), however, imposes a limit on this path to lawful permanent resident status: the USCIS must deny a family-based petition brought by a U.S. citizen who has been convicted of a sex offense against a minor, unless the USCIS, in its "sole and unreviewable discretion, determines that the citizen poses no risk to" the beneficiary relative. 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

Plaintiff Mark Christian, proceeding *pro se*, brings this suit against the USCIS, the Department of Homeland Security ("DHS"), and the Attorney General, challenging the USCIS's denial of two Form I-130 petitions—one in February 2023 and the other in February 2026—requesting recognition of his wife as an "immediate relative." The USCIS denied both petitions

on the ground that Christian had been convicted of a sex offense specified in the AWA and had failed to prove "beyond any reasonable doubt" that he posed no risk to his wife.

Christian contends that the USCIS's application of the beyond-any-reasonable-doubt standard to its no-risk determination violated binding agency precedent in *Matter of Chawathe*, which directs the USCIS in adjudicating immigration petitions and visa applications to apply a preponderance-of-the-evidence standard, except where "a different standard is specified by law." 25 I&N Dec. 369, 375 (AAO 2010). Because the AWA specifies no evidentiary standard for such determinations, Christian contends, *Matter of Chawathe* controls and the USCIS's application of a heightened standard of proof violated the *Accardi* doctrine, under which an agency must follow its own binding precedents. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Christian seeks vacatur of the USCIS's denial of his petition and a remand for the agency to re-adjudicate it under the preponderance-of-the-evidence standard. Dkt. 11 at 4 (Am. Compl. Prayer for Relief).

In an earlier decision, the Court granted Plaintiff's motion to expedite, denied Defendants' motion to dismiss, and denied Plaintiff's cross-motion for summary judgment. *See Christian v. Mullin*, No. 26-cv-1428, 2026 WL 2453585 (D.D.C. Aug. 21, 2026) ("*Christian I*"). Now before the Court are Defendants' motion for relief from the requirement under Local Civil Rule 7(n)(1) to file a certified list of the contents of the administrative record, Dkt. 18, Defendants' motion for summary judgment, Dkt. 29, and Plaintiff's cross-motion for summary judgment, Dkt. 31. The central question posed by the parties' cross-motions for summary judgment is whether *Matter of Chawathe*'s direction regarding use of the preponderance-of-the-evidence standard in adjudicating immigration petitions applies to AWA no-risk determinations.

For the reasons explained below, the Court concludes that Plaintiff has the better argument and that *Chawathe* is binding in the present context.

The Court, accordingly, will **DENY** Defendants' motion for summary judgment and will **GRANT** in part and **DENY** in part Plaintiff's cross-motion for summary judgment. The Court will **DENY** as moot Defendants' request for relief from Local Rule 7(n)(1).

## I. BACKGROUND

### A. Statutory and Regulatory Background

Under the INA, a United States citizen may file a Form I-130 petition with the USCIS, a component of the DHS, requesting that the USCIS classify his or her spouse or child as an immediate relative. *See* 8 U.S.C. § 1154(a)(l)(A)(i); 6 U.S.C. § 271(b) (transferring authority to adjudicate immigrant visa petitions and all other adjudications previously performed by the Immigration and Naturalization Service to the USCIS); 8 C.F.R. §§ 204.l(a)(1), 204.2(a)(1). If the facts contained in the Form I-130 petition are true, the USCIS "shall . . . approve" the petition, and the beneficiary relative may then immigrate to the United States and obtain lawful permanent resident status. *See* 8 U.S.C. § 1154(b); *Castaneira v. Noem* 138 F.4th 540, 542 (D.C. Cir. 2025). The petitioner bears the burden of establishing eligibility and entitlement to the status claimed. 8 U.S.C. § 1361.

The Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, imposes limits on this process. Enacted "to protect the public from sex offenders and offenders against children," *id.* § 102, 120 Stat. at 590, the AWA, as relevant here, amended the INA with respect to U.S. citizens who have been convicted of a "specified offense against a minor." The AWA defines a "specified offense against a minor" to include, among other offenses, "[c]riminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct" and "[a]ny conduct that by its nature is a sex offense against a minor." *Id.*

§ 111(7), 120 Stat. at 592 (codified at 34 U.S.C. § 20911(7)). A U.S. citizen who has been convicted of a sex offense against a minor may not petition for immediate relative status for their spouse or child, "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to" the beneficiary relative. *Id.* § 402(a)(2), 120 Stat. at 622 (codified at 8 U.S.C. § 1154(a)(1)(A)(viii)(I)). The Secretary of Homeland Security has delegated to the USCIS the authority, in adjudicating family-based petitions, to determine whether a citizen "poses no risk" to the beneficiary relative. *See* 6 U.S.C. § 271(b)(1); 8 C.F.R. § 2.1; Dep't of Homeland Sec. Delegation No. 0150.l(II)(H) (June 5, 2003), https://perma.cc/7ZKV-4EG5.

The AWA neither includes an express evidentiary standard applicable to such determinations nor requires the agency to follow any specific procedures in determining whether a Form I-130 petitioner "poses no risk" to the beneficiary relative. In February 2007, however, the USCIS's Associate Director issued an interoffice memorandum to the agency's field offices containing guidance on applying the AWA. *See* Interoffice Memorandum from Michael Aytes, Associate Director, to Regional Directors, U.S. Citizenship & Immigration Servs., Dep't of Homeland Sec., *Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé(e) under the Adam Walsh Child Protection and Safety Act of 2006* (Feb. 8, 2007) ("Aytes Memorandum"), https://perma.cc/5YXA-NYQR. The memorandum explains that the USCIS interprets the "poses no risk" provision of the AWA "to mean that the petitioner must pose no risk to the safety or well-being of the beneficiary, which includes the principal beneficiary and any alien derivative beneficiary." *Id.* at 5. As relevant here, the memorandum further provides that, to avoid denial of a Form I-130 petition, a petitioner who has been convicted of a specified offense against a minor "must submit evidence of rehabilitation and any

other relevant evidence that clearly demonstrates, beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies)."[1] *Id.*

This agency guidance arguably conflicts with binding agency precedent requiring application of a preponderance-of-the-evidence standard in administrative immigration adjudications like those involving Form I-130 petitions. In *Matter of Chawathe*, a case involving the evidentiary standard an applicant must satisfy to show that his or her employer is an "American firm or corporation" for purposes of a Form N-470 application, the USCIS's Administrative Appeals Office ("AAO") established that "a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought," except in cases in which "a different standard is specified by law." 25 I&N Dec. at 375. *Matter of Chawathe* was issued by the AAO in January 2006 and "adopted" by the USCIS as nonbinding guidance to USCIS field officers. *Id.* at 369 n.1. In October 2010, the USCIS, with the approval of the Attorney General, designated *Chawathe* as precedential pursuant to 8 C.F.R. § 1003.1(i). *Chawathe*, 25 I&N Dec. at 369 n.1. Decisions designated by the agency as precedential are published and "serve as precedents in all

[1] In 2008, the USCIS issued another memorandum to its field office leadership about adjudicating AWA cases, which reiterated the beyond-any-reasonable-doubt standard. *See* Memorandum from Donald Neufeld, Acting Associate Director, to Field Leadership, U.S. Citizenship & Immigration Servs., Dep't of Homeland Sec., *U.S. Citizenship and Immigration Services, Transmittal of SOP for Adjudication of Family-Based Petitions Under the Adam Walsh Child Protection and Safety Act of 2006* (Sept. 24, 2008) ("Neufeld Memorandum"), https://perma.cc/32UF-XP6A. Because neither party meaningfully discusses the Neufeld Memorandum nor contends that it bears in any way on the proper disposition of the parties' motions, the Court will not separately address the Neufeld Memorandum. The Court notes, however, that the Neufeld Memorandum was, like the Aytes Memorandum, a guidance document issued internally from USCIS leadership to USCIS field offices. Because, as the Court explains below, both memoranda constitute nonbinding interpretive guidance and the Neufeld Memorandum is identical in relevant part to the Aytes Memorandum, the Court agrees with the parties that the Neufeld Memorandum does not affect the Court's resolution of this case.

proceedings involving the same issue(s)." 8 C.F.R. § 103.3(c); *see also id.* §§ 1003.1(g)(2), (i). "Except as these decisions may be modified or overruled by later precedent decisions, they are binding on all [USCIS] employees" in adjudicating immigration petitions. *Id.* § 103.3(c).

**B. Procedural History**

Christian is a U.S. citizen and disabled veteran who lives in Oklahoma City, Oklahoma. Christian suffers from a variety of grave medical conditions, including congestive heart failure, kidney failure, type 2 diabetes, and post-traumatic stress disorder. Dkt. 15 at 3; Dkt. 11-1 at 1. Christian's wife is a foreign national, and, over the course of fifteen years, Christian has filed four separate Form I-130 petitions on her behalf. Dkt. 11-1 at 1. The USCIS has denied each application on the grounds that Christian has been convicted of a specified offense against a minor under the Adam Walsh Act.[2]

This case involves the USCIS's two most recent denials of Christian's Form I-130 petitions, which were issued on February 7, 2023, and February 25, 2026. *See* Dkt. 11-1 at 2; Dkt. 11-3 (February 7, 2023 decision); Dkt. 1-1 (February 25, 2026 decision). In both decisions, the USCIS explained that, given Christian's conviction of a specified offense against a minor, avoiding denial of his petition required him to submit evidence that demonstrates, "beyond any reasonable doubt," that he "poses no risk" to the beneficiary. Dkt. 11-3 at 3; Dkt. 1-1 at 5. Evaluating the evidence Christian submitted under this standard, the USCIS concluded that Christian had failed to demonstrate that he posed no risk to his wife and, accordingly, denied his petition. Dkt. 11-3 at 6; Dkt. 1-1 at 7. In neither decision did the USCIS consider whether a

[2] Christian does not dispute that he has been convicted of one of the sex offenses specified by the Act.

different standard of proof applied nor whether Christian might have succeeded in demonstrating that he posed no risk to his wife under a different standard.

Christian initiated this action on April 24, 2026, Dkt. 1, and sought expedited consideration of his case given his ongoing health crisis and his concern that his wife, who is his sole caregiver, might face imminent removal from the United States, Dkt. 3. At the same time that he filed his complaint, Christian moved for summary judgment. Dkt. 4. On June 8, 2026, Christian filed an amended complaint, asserting claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, alleging that the USCIS applied the incorrect evidentiary standard to its no-risk determination in adjudicating his petition. Dkt. 11 at 4. Christian contends that the USCIS's application of the "beyond any reasonable doubt standard" violates binding USCIS precedent in *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010), and D.C. Circuit precedent in *Castaneira v. Noem*, 138 F.4th 540 (D.C. Cir. 2025).

After filing his amended complaint, Plaintiff filed a renewed motion for expedited consideration given his "profound, active, and life-threatening" condition. Dkt. 15 at 2. In response, Defendants moved to dismiss, arguing that the Court lacked subject-matter jurisdiction over Plaintiff's claim because the INA strips federal courts of jurisdiction "to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the[ir] [respective] discretion," 8 U.S.C. § 1252(a)(2)(B)(ii). *See* Dkt. 17 at 11.

The Court granted Christian's motion to expedite as unopposed and denied Defendants' motion to dismiss as foreclosed by binding D.C. Circuit precedent in *Castaneira*. *See Christian I* 2026 WL 2453585, at *2–3. The Court also denied Christian's motion for summary judgment

without prejudice to permit him to re-brief the dispositive issues in light of the Court's decision, and the Court set an expedited briefing schedule for doing so. *Id.* at *4. The Court directed Plaintiff to address in his summary judgment briefing, among other things, whether *Matter of Chawathe* constitutes controlling precedent in the present circumstances. *Id.*

Defendants filed their motion for summary judgment on September 8, 2026, Dkt. 29, and Plaintiff opposed that motion and cross-moved for summary judgment three days later, Dkt. 30; Dkt. 31. The Court then issued a *Neal* Order advising Plaintiff of the standards governing the Court's consideration of Defendants' summary judgment motion and permitting Plaintiff to file a supplemental memorandum in opposition based on the Court's instructions. Dkt. 32. Plaintiff did so on September 21, 2026, Dkt. 33, and Defendants filed their reply and opposition to Plaintiff's motion for summary judgment on October 13, Dkt. 34; Dkt. 35. Plaintiff filed his final reply on October 19, 2026. Dkt. 36. Both motions are ripe for the Court's review. Pending before the Court is also Defendants' motion for relief from the requirement under Local Civil Rule 7(n)(1) to file a certified list of the contents of the administrative record. Dkt. 18. On September 8, 2026, Defendants filed with the Court the certified list of the contents of the administrative record. Dkt. 28.

## II. LEGAL STANDARD

In general, Federal Rule of Civil Procedure 56 authorizes a federal district court to enter summary judgment when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a case involving review of a final agency action under the [APA], however, the standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 8 (D.D.C. 2012). In

the unique context of a case brought under the APA, the district court "sits as an appellate tribunal," *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993), to decide "whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review," *Coal. for Common Sense in Gov't Procurement v. United States*, 821 F. Supp. 2d 275, 280 (D.D.C. 2011).

## III. ANALYSIS

The crux of the present dispute is whether *Matter of Chawathe* applies in this context and thus binds USCIS to apply a preponderance-of-the-evidence, rather than beyond-any-reasonable-doubt, standard in assessing whether a Form I-130 petitioner who has been convicted of a "specified offense against a minor" under the AWA "poses no risk" to the beneficiary of the petition.

### A. Subject-Matter Jurisdiction

At the outset, Defendants re-raise their earlier contention that the Court lacks jurisdiction to review whether the USCIS's application of a beyond-any-reasonable-doubt standard complied with *Chawathe*. As the Court has already explained, *see Christian I*, 2026 WL 2453585, at *2–3, D.C. Circuit precedent establishes that the Court has jurisdiction to determine whether the USCIS has followed binding agency precedent in rendering its otherwise discretionary decision on Christian's Form I-130 petition, *see Castaneira*, 138 F.4th at 548. Although Defendants argue that recent decisions from the Supreme Court and Seventh Circuit "undermine the D.C. Circuit's holding," Dkt. 29 at 27, neither decision overrules nor abrogates the D.C. Circuit's decision in *Castaneira*.

With respect to the Supreme Court's decision in *Mullin v. Doe*, 609 U.S. 324 (2026), Defendants concede that the decision concerns a different statutory provision with different jurisdiction-stripping language. *See* Dkt. 29 at 27–28; *Mullin*, 609 U.S. at 338–39 (interpreting

the language of 8 U.S.C. § 1254a(b)(5)(A), which precludes judicial review of "any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state" under the Temporary Protected Status Program). In *Castaneira*, the D.C. Circuit considered, and rejected, the government's contention that § 1252(a)(2)(B)(ii) precludes judicial review of the Secretary's alleged disregard of "applicable agency precedent" by applying the beyond-any-reasonable doubt standard to the plaintiff's Form I-130 petition. 138 F.4th at 549. In *Mullin*, in contrast, the Supreme Court did not interpret nor apply § 1252(a)(2)(B)(ii), nor did it consider whether federal district courts have jurisdiction to consider claims challenging otherwise unreviewable discretionary determinations on the ground that the agency contravened its own binding precedent. But even if *Castaneira* were in some tension with *Mullin*, the Court would remain bound to follow on-point D.C. Circuit precedent unless and until the Supreme Court or the *en banc* D.C. Circuit overrules it or "effectively overrule[s]" it by thoroughly "eviscerat[ing]" its reasoning. *Brookens v. Acosta*, 297 F. Supp. 3d 40, 47 (D.D.C. 2018) (quoting *Perry v. MSPB*, 829 F.3d 760, 764 (D.C. Cir. 2016), *rev'd on other grounds*, 582 U.S. 420 (2017)), *aff'd sub nom. Brookens v. Dep't of Lab.*, No. 18-5129, 2018 WL 5118489 (D.C. Cir. Sept. 19, 2018); *see City of Saint Paul, Minnesota v. Wright*, 816 F. Supp. 3d 65, 71–72 (D.D.C. 2026). *Mullin* does neither, so *Castaneira* remains binding law. *See Castaneira v. Mullin*, No. 22-cv-1485, 2026 WL 3438451, at *9–10 (D.D.C. Nov. 12, 2026) (reaching the same conclusion).

Nor, contrary to Defendants' suggestion, does the Seventh Circuit's disagreement with *Castaneira* bear on this Court's decision. *See* Dkt. 29 at 28 (arguing that the Seventh Circuit in *Nobles v. Mullin*, 177 F.4th 886, 894 (7th Cir. 2026), "outright rejected the D.C. Circuit's holding in *Castaneira*"). "Binding precedent for the district courts within a circuit is set only by

the court of appeals for that circuit." *Cannon v. Watermark Ret. Communities, Inc.*, 45 F.4th 137, 149 (D.C. Cir. 2022) (citation modified). It is not uncommon for the circuits to disagree on significant questions of law, but only the decision of the D.C. Circuit binds this Court, and this Court must abide by that decision.

Notably, Defendants have not even attempted to distinguish this case from *Castaneira*, nor could they. In *Castaneira*, the D.C. Circuit addressed whether the district court had jurisdiction to decide whether the USCIS failed to abide by *Matter of Chawathe* when it required the Form I-130 petitioner in that case to prove beyond any reasonable doubt that he posed no risk to the beneficiary relative. The circuit held that this Court had jurisdiction to consider whether *Matter of Chawathe* binds the agency in this context and that, if so, "it must exercise its judicial review over [the plaintiff's] challenge to the standard of proof." 138 F.4th at 551. That conclusion applies here with equal force.

This Court, accordingly, has jurisdiction to review Christian's claim that the USCIS departed from binding agency precedent by applying the beyond-any-reasonable-doubt standard in adjudicating his Form I-130 petition.

### B. Merits

The Court next turns to the merits of Plaintiff's APA claim challenging the denial of his petition as contrary to binding agency precedent.[3] Because the parties agree that the USCIS

---

[3] Plaintiff's complaint also seeks relief under the Mandamus Act, which empowers courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *see also* Dkt. 11 at 4, 5. Although the Court recognizes that Plaintiff's *pro se* status requires the Court to construe his filings liberally, *see Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), the Court notes that Plaintiff's pending cross-motion for summary judgment raises arguments under only the APA, *see* Dkt. 30 at 8, 24. And, in any event, considering whether mandamus is available in this case is unnecessary because, to the extent Plaintiff's claim is successful, the APA provides a remedy. *See Liu v. Novak*, 509 F.

applied a beyond-any-reasonable-doubt, rather than a preponderance-of-the-evidence, standard to its no-risk determination, the merits of this dispute turn entirely on whether *Matter of Chawathe* provides the applicable standard for such determinations. If *Chawathe* applies to no-risk determinations that the USCIS makes in adjudicating family-based petitions, the USCIS's application of a beyond-any-reasonable-doubt standard violated binding agency precedent, and Christian is entitled to summary judgment. *See Castaneira*, 138 F.4th at 551 (citing *Accardi*, 347 U.S.at 268). If *Chawathe* does not apply, the Court may not review the USCIS's ultimately discretionary no-risk determination. *See id.* at 550 (recognizing that "USCIS's final no-risk determinations are unreviewable"). The parties agree that *Chawathe* qualifies as a binding agency precedent pursuant to 8C.F.R. §§ 103.3(1) and 1003.1(i).[4] *See* Dkt. 29 at 19; *see also Castaneira*, 138 F.4th at 549 ("The Government does not dispute that *Chawathe* constitutes binding agency precedent pursuant to the agency's own regulations."). The question for the Court is whether this binding precedent applies to no-risk determinations under the AWA.

Although *Matter of Chawathe* arose in the context of a noncitizen's application to preserve his residence and the subsidiary question whether he was "employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States," 25 I&N Dec. at 371, *Chawathe* announced a more expansive rule: "Except where a different standard is specified by law, a petitioner or applicant in

---

Supp. 2d 1, 8 n.3 (D.D.C. 2007) (citing *Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852, 858 (D.C. Cir. 2007)). The Court will, accordingly, focus on Plaintiff's APA claim.

[4] Although Defendants emphasize in their opposition that *Matter of Chawathe* was a nonbinding "adopted" decision when it was first issued in 2006, *see* Dkt. 34 at 6 (referring to *Chawathe* as a "non-precedential Adopted Decision"), they concede that *Chawathe* was a binding precedent at the time the USCIS adjudicated Christian's petition and has been since the USCIS and the Attorney General designated it as such in 2010, *see id.* at 10–11.

administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." *Id.* at 375. On its face, the rule applies broadly to "petitioner[s] [and] applicant[s] in administrative immigration proceedings," and the proviso for cases in which "a different standard is specified by law" plainly contemplates application beyond the particular question posed in *Chawathe*. Indeed, from the very beginning—and even before the decision was given binding precedential effect—the USCIS understood that *Chawathe* set forth the "standard of proof applicable in *most* administrative immigration proceedings," albeit not in cases "where a higher standard is specified by law." Memorandum from Robert C. Divine, Acting Deputy Director, to Service Center Directors, U.S. Citizenship & Immigration Servs., Dep't of Homeland Sec., *Matter of Chawathe* (Jan. 11, 2006) ("Divine Memorandum"), https://perma.cc/RD7G-CKQ7.

Defendants contend that, despite *Chawathe*'s sweeping language, the Court should conclude that *Chawathe* is distinguishable from the instant case based on its different factual backdrop. But Defendants' attempt to circumscribe *Chawathe*'s reach is belied by both the decision's own language and the agency's practice in applying it.

As noted above, *Matter of Chawathe* unmistakably speaks to the evidentiary standard applicable to USCIS adjudications beyond those involving questions of an employer's status as an "American firm or corporation" or subsidy thereof. In establishing that the preponderance-of-the-evidence constitutes the default standard of proof in immigration adjudications, *Chawathe* cites immigration decisions in various contexts, including decisions involving family-based petitions. *See Matter of Martinez*, 21 I&N Dec. 1035, 1036 (BIA 1997) (requiring a petitioner seeking a visa on behalf of his daughter to prove by a preponderance of evidence that the beneficiary was his child); *Matter of Soo Hoo*, 11 I&N Dec. 151, 152–53 (BIA 1965) (requiring

a petitioner seeking a visa on behalf of her adopted son to prove by a preponderance of the evidence that there was a valid adoption). And following *Chawathe*'s elevation to binding precedent, the USCIS has routinely cited *Chawathe* in its guidance materials, and in its decisions in myriad factual contexts, for the proposition that the default evidentiary standard in USCIS adjudications is preponderance of the evidence. *See, e.g.*, U.S. Citizenship & Immigr. Servs., *AAO Practice Manual, Chapter 3—Appeals* ("AAO Practice Manual") (citing *Chawathe*, 25 I&N Dec. at 376), https://perma.cc/DFK6-6Z5T; *Matter of Dhanasar*, 26 I&N Dec. 884, 889 & n.8 (2016) (applying *Chawathe* to a petition for a national interest waiver); *Matter of Christos, Inc.*, 26 I&N Dec. 537, 539 (AAO 2015) (applying *Chawathe* to a petition seeking visa preference classification for immigrants qualified to perform "skilled labor"); *Matter of Skirball Cultural Ctr.*, 25 I&N Dec. 799, 805 (2012) (applying *Chawathe*'s preponderance standard to a visa petition seeking classification of beneficiaries as entertainers in a "culturally unique" program).

Whether *Chawathe* binds the agency to apply the preponderance standard to Christian's Form I-130 petition—including the no-risk determination required by the AWA—turns on two questions: first, whether *Chawathe* sets forth a general default rule applicable to "administrative immigration proceedings," and, second, if so, whether this case falls within the exception to the default rule for adjudications for which "a different standard is specified by law." 25 I&N Dec. at 375.

As to the first question, Defendants do not dispute that the USCIS's adjudication of Christian's Form I-130 petition is an "administrative immigration proceeding," as that phrase is used in *Chawathe*. Nor can the Court discern any reason to conclude otherwise. Like the examples *Chawathe* cites, Christian's petition was filed with the USCIS and seeks an

immigration benefit (here, classification of his wife as an "immediate relative") under the chapter of the U.S. Code dealing with immigration and nationality. *See* 8 U.S.C. § 1154(a). The examples on which *Chawathe* relies further confirm that the decision contemplates application of the preponderance standard both when a petitioner seeks a benefit for him or herself and when a petitioner seeks that benefit on behalf of another. *See, e.g.*, *Matter of Martinez*, 21 I&N Dec. at 1036.

Defendants, instead, focus much of their argument on the second question, which asks whether, in the circumstances presented here, "a different standard is specified by law," 25 I&N Dec. at 375. Defendants point to two potential sources of "law" governing family-based petitions in AWA cases. First, they contend that the AWA itself is inconsistent with *Chawathe*'s preponderance standard and thus compels application of a more onerous evidentiary standard. Second, they invoke the Aytes Memorandum's interpretive guidance directing USCIS officials adjudicating Form I-130 petitions in AWA cases to apply a beyond-any-reasonable-doubt standard. Neither argument is persuasive.

Defendants raise a variety of arguments in support of their contention that *Chawathe*'s preponderance standard is inconsistent with the AWA. They point, for example, to the purpose of the AWA to protect beneficiaries by imposing a high bar for those convicted of sex offenses to file family-based immigration petitions. Dkt. 29 at 15–16. And they cite ample legislative history to this effect. *See id.* Reinforcing this stated purpose, Defendants also invoke what they characterize as textual indicia that AWA "no risk" adjudications demand an onerous burden of proof. These include the titles and subheadings in the AWA, the language of which reflects an intent to "prevent sex offenders from abusing children" and "bar[] convicted sex offenders from having family-based petitions approved." *Id.* at 15. Finally, Defendants contend that the AWA's

requirement that the Secretary determine that a petitioner "poses *no risk*"—that is, "not any" risk—is incompatible with the preponderance standard, under which the USCIS might conclude that there is "a 49 percent chance that the sex offender *would* pose a risk" to the beneficiary and yet nevertheless approve the petition. *Id.* at 21.

But even if the beyond-any-reasonable-doubt standard would further Congress's goals in enacting the AWA, Defendants' arguments from purpose and legislative history do not answer the question presented here, which is not whether the beyond-any-reasonable-doubt standard is consistent with the purposes of the AWA, but rather whether it is the *only* standard the AWA permits; that is, is it the standard "specified" in the AWA? The Court does not doubt that Congress intended to impose a substantial burden on family-based petitioners who have been convicted of sex offenses against minors, but Defendants provide no basis to conclude that the AWA's history and purpose (or titles and subheadings) establish that Congress implicitly mandated that the USCIS impose a beyond-any-reasonable-doubt burden of proof or that it foreclosed the USCIS's application in this context of the default preponderance standard. Most notably, Defendants fail to explain why the substantive "no risk" test fails to achieve the statutory purpose or why the statute should be read to impose a second level of assurance. On Defendants' telling, Congress was not satisfied with its requirement that the USCIS find by a preponderance of the evidence—or some other standard—that the petitioner "poses no risk" to the immediate relative at issue, but instead at least implicitly required that the agency go a step further and find beyond any reasonable doubt that the petitioner poses no risk. That is, in Defendants' view, the AWA does not permit the USCIS to approve a petition if it concludes that it is more likely than not that a Form I-130 petitioner poses *zero* risk to the beneficiary; rather, the AWA demands that the agency conclude that there is no reasonable doubt that a petitioner

poses zero risk. The first standard is daunting; the second borders on the insurmountable. The question before the Court is not which standard constitutes the better policy, but whether Congress required—as a matter of law—that the USCIS apply the second approach. Defendants have failed to identify any statutory text, context, or legislative history that supports that legal conclusion.

As for Defendants' textual argument that the "poses no risk" requirement "specifie[s]" a standard other than *Chawathe*'s preponderance standard, the Court is further unpersuaded. The *Chawathe* proviso applies "where a different standard is specified by law," 25 I&N Dec. at 375, and not where a different standard is "merely assumed or contemplated," *Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010). As the Supreme Court has explained, the word "'[s]pecified is not synonymous with 'implied' or 'anticipated.'" *Id.* Rather, it "means 'to name or state explicitly or in detail.'" *Id.* (quoting Webster's New Collegiate Dictionary 1116 (1974)). Here, the relevant provision of the AWA does not specify the standard of proof the USCIS must apply in making no-risk determinations.

Even assuming Defendants are correct that the phrase "poses no risk" requires the USCIS to determine that the petition poses "not any" or "zero" risk to the beneficiary, moreover, that language simply establishes the *substantive* standard governing the USCIS's determination, not the *evidentiary* standard the USCIS is to apply in evaluating whether the petitioner has satisfied the standard. *See Addington v. Texas*, 441 U.S. 418, 423 (1979) ("The function of a standard of proof . . . is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.") (citation modified); *see also Castaneira*, 2026 WL 3438451, at *7 ("Evidentiary burdens deal with the degree of certainty with which a proposition can be sustained, not with the content of

the underlying proposition."). That is, the AWA instructs only that the USCIS must determine that a petitioner "poses no risk" to the beneficiary, not how confident the USCIS must be in making the no-risk determination—*i.e.*, whether the agency must determine that it is "probably true" or "more likely than not," *Chawathe*, 25 I&N Dec. at 376, that a petitioner poses no risk or that there is no reasonable doubt that the petitioner poses no risk.

That the AWA does not "specif[y]" a different evidentiary standard in the manner contemplated by *Chawathe* is reinforced by the sole example *Chawathe* itself provides of a context in which a "different standard is specified by law." 25 I&N Dec. at 375. *Chawathe* identifies a specific provision of the INA expressly requiring that a petitioner seeking a visa on behalf of a second spouse within five years of a prior spousal preference petition rebut the presumption of fraudulent marriage "by clear and convincing evidence." *Id.* at 376 (citing *Matter of Patel*, 19 I&N Dec. 774, 782–83 (BIA 1988)). Unlike the AWA provision in question here, that INA provision explicitly indicates that the agency, in determining whether the presumption of fraudulent marriage has been rebutted, must apply a particular evidentiary standard: clear and convincing evidence.

The Court's reading of *Matter of Chawathe* finds additional support in other provisions of the immigration laws that, unlike the AWA, expressly specify the evidentiary standard applicable in certain immigration adjudications. In addition to *Chawathe*'s reference to the clear-and-convincing standard in rebutting the presumption of fraudulent marriage, the immigration laws abound with examples. As Plaintiff points out, 8 U.S.C. § 1229a(c)(2) imposes a burden of proof on an applicant for admission in removal proceedings to establish that he or she "is clearly and beyond doubt" admissible or, "by clear or convincing evidence," that he or she is lawfully present pursuant to a prior admission. The asylum laws also direct that an

applicant for asylum must show "by clear and convincing evidence" that the application was filed within a year of his or her arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). These are just a few of the many examples illustrating that, when Congress wants to specify the burden of proof in an immigration proceeding, "it knows exactly how to do so." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 514 (2018). Because Congress chose not to include similar language establishing a standard of proof in the AWA, the AWA does not "specify" an evidentiary standard other than the default preponderance standard *Chawathe* requires.

Finally, the Court notes that Defendants' contention that the AWA compels application of a beyond-any-reasonable-doubt standard in making no-risk determinations is in tension with their position that the USCIS has sole and unreviewable discretion over every aspect of its process for determining whether a petitioner poses no risk, including the burden of proof. *See* Dkt. 29 at 14–15. The D.C. Circuit in *Castaneira* recognized that, but for the agency's own potential constraint on its discretion in *Chawathe*, the AWA grants the USCIS unfettered discretion to establish the governing standard of proof. *See Castaneira*, 138 F.4th at 551 ("Nothing in the Act required the agency to adopt any particular standard."). And every other court of appeals to have confronted the issue has concluded that the USCIS has discretion to set the standard of proof in AWA adjudications, albeit in the context of concluding that either § 1154(a) alone, or § 1154(a) in combination with § 1252(a)(2)(B)(ii), strips federal courts of jurisdiction over challenges to the evidentiary standard the USCIS applies. *See Nobles v. Mullin*, 177 F.4th 886, 893–94 (7th Cir. 2026); *Bourdon v. Dep't of Homeland Sec.*, 940 F.3d 537, 545 (11th Cir. 2019); *Bakran v. Sec'y, Dep't of Homeland Sec.*, 894 F.3d 557, 563 (3d Cir. 2018); *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018); *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 380–82 (6th Cir. 2017); *Roland v. U.S. Citizenship & Immigration Servs.*,

850 F.3d 625, 629–30 (4th Cir. 2017); *Bremer v. Johnson*, 834 F.3d 925, 930–31 (8th Cir. 2016). The Court is, accordingly, unpersuaded by Defendants' contention that the AWA *requires* the USCIS to apply a beyond-any-reasonable-doubt standard, or any other evidentiary standard in no-risk determinations.

In addition to relying on the AWA itself, Defendants invoke the Aytes Memorandum, which was issued to USCIS field offices and which set out an interpretation of the AWA under which a petitioner must prove beyond any reasonable doubt that he or she poses no risk to the beneficiary relative. Defendants point out that, when *Chawathe* was first issued in January 2006, it was merely an "adopted" decision—that is, a nonbinding decision on which USCIS officers could, but did not have to, rely in adjudicating petitions. Dkt. 34 at 9. The Aytes Memorandum was issued in 2007, while *Chawathe* remained a nonbinding "adopted" decision. *Id.* In Defendants' view, this sequence demonstrates that the Aytes Memorandum and *Chawathe* "validly coexisted" at that time—and that the Court should infer that the Aytes Memorandum and *Chawathe* continue to do so. *Id.* As Defendants note, *Chawathe*'s elevation to binding precedent in 2010 came after the USCIS began regularly applying the beyond-any-reasonable-doubt standard in AWA cases pursuant to the Aytes Memorandum. *Id.* at 10. Defendants maintain that, based on the timing of these decisions, the Court should infer that the USCIS did not intend its elevation of *Chawathe* to precedential status to supersede the already-in-force beyond-any-reasonable-doubt standard in AWA cases.[5] *See* Dkt. 29 at 18–19; Dkt. 34 at 10–12.

[5] Defendants also point out that the D.C. Circuit in *Castaneira* hypothesized that this might be so. *See* 138 F.4th at 551 ("It is possible that *Chawathe* does not apply in the AWA context and that, in making its preponderance-of-the-evidence standard precedential, the Department did not mean to disturb the beyond-any-reasonable doubt standard that may have already been in place for no-risk determinations under the AWA."). But the Court does not read *Castaneira* to express a view on this question one way or another. Rather, the D.C. Circuit remanded the case to the district court to consider this issue in the first instance. *See id.*

Defendants' argument about the Aytes Memorandum raises two possible questions. First, does the Aytes Memorandum constitute an alternative source of "law" that "specif[ies]" a standard of proof that falls within *Chawathe*'s exception? And, if not, is there reason for the Court nevertheless to interpret *Chawathe* as implicitly excluding the AWA context from the otherwise generally applicable rule? Based on the arguments Defendants have presented, the answer to both is no.

As for the first, Defendants make no serious argument that the Aytes Memorandum constitutes "law" in the sense contemplated by *Chawathe*. In their reply brief, Defendants assert that the Aytes Memorandum is not without "force of law" because it "mandates procedures and standards an adjudicator must follow when evaluating an I-130 petition consistent with the congressional intent of the AWA." Dkt. 34 at 10. Even here, however, Defendants stop short of asserting that a guidance memorandum constitutes a conflicting "law" as that term is used in *Chawathe*. And for good reason. As the Aytes Memorandum itself declares:

> This memorandum is intended solely for the guidance of USCIS personnel in performing their duties relative to the adjudication of applications. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

Aytes Memorandum at 8. As a matter of common usage and common sense, it is safe to conclude that internal agency "guidance" that is unenforceable "at law by any individual or other party" is not a "law" in the relevant sense. And, to the extent there remained any doubt regarding the usage employed in *Chawathe*, the sole example the AAO gave in that decision was a statutory provision establishing an evidentiary standard for a particular administrative determination, not a nonbinding guidance document. *See* 25 I&N Dec. at 376; *see also Matter of Aceijas-Quiroz*, 26 I&N Dec. 294, 301 (BIA 2014) ("Ordinarily, in visa petition proceedings, the

petitioner is required to demonstrate eligibility for the benefit sought under a 'preponderance of the evidence' standard. . . . Moreover, a heightened standard of review is generally applied by legislation.").

Of course, *Chawathe*'s single example need not reflect the only means by which Congress or an agency can establish a "law" that "specifies" an evidentiary standard. Although Defendants have not made this argument, agency regulations promulgated by notice-and-comment rulemaking can carry the binding "force of law," *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979), and even agency decisions designated as precedential pursuant to 8. C.F.R. §§ 103.3(c) and 1003.1(i) might reasonably be characterized as "law" because they have binding force on the agency. Or, at the very least, superseding binding agency precedent could itself modify *Chawathe*'s general rule by carving out a particular category of immigration adjudications for a different standard of proof.

But even assuming that the reference to "law" in *Chawathe* includes all binding statutes, regulations, and precedential agency decisions, the Aytes Memorandum does not meet this bar. The Aytes Memorandum is an interoffice memorandum setting out the USCIS's interpretation of the AWA and providing "guidance" to USCIS field officers in applying the Act to family-based petitions. Although the memorandum "direct[s]" "USCIS field offices" to follow certain "instructions and procedures," Aytes Memorandum at 2, it lacks any of the hallmarks of a binding legal rule. It was not promulgated through notice-and-comment rulemaking nor published in the Federal Register, and, as explained above, it expressly disavows that it gives rise to any substantive or procedural right that is "enforceable by law." *Id.* at 8. Instead, the Aytes Memorandum is merely an internal guidance document that, like a broad array of missives issued by federal agencies every day, instructs agency personnel how to do their job. *See POET*

*Biorefining, LLC v. EPA*, 970 F.3d 392, 407–08 (D.C. Cir. 2020); *Am. Mining Congress v. Mine Safety & Heath Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993)); *see also Parella v. Johnson*, No. 15-cv-0863, 2016 WL 3566861, at *11 (N.D.N.Y. June 27, 2016) (classifying the Aytes Memorandum as an interpretive rule that "do[es] not have the force of law"). Accordingly, the Court cannot conclude that the Aytes Memorandum constitutes "law" that "specifie[s]" a different standard of proof under *Chawathe*.

Defendants' second argument fares no better. This argument starts with the premise that the USCIS applied the Aytes Memorandum's beyond-any-reasonable-doubt standard to no-risk determinations before *Chawathe* was designated as precedential, and from this premise skips to the conclusion that *Chawathe* did not alter this status quo. But the sequence of these decisions, alone, is not dispositive. By Defendants' telling, the Court should infer that the AAO intended to leave the standard set forth in the Aytes Memorandum in place when it gave *Matter of Chawathe* precedential status, because *Chawathe* existed as a nonprecedential adopted decision before the memorandum was issued (and thus could be trumped by the memorandum) and was not given precedential weight until after it issued (and thus must include an implied exception for AWA cases). But that logic does not follow. Indeed, one might just as easily posit that because the AAO made no exception for guidance documents like the Aytes Memorandum when it issued *Chawathe*, or when it gave the decision precedential status, one can infer that the agency did not intend to create an implicit exception for pre-precedential-status guidance documents. *See Castaneira*, 2026 WL 3438451, at *8 ("As a matter of logic, the fact that the Agency designated *Chawathe* as binding precedent after the Agency had an established practice of applying a beyond-any-reasonable-doubt standard is consistent with the conclusion that the Agency decided to reverse its previous determination and adopt a new, binding evidentiary standard.").

The agency's own treatment of *Chawathe* after its elevation to precedent, moreover, shows that the decision applies beyond its narrow factual context and prescribes a general rule; the USCIS repeatedly cites *Chawathe* as establishing a preponderance-of-the-evidence standard for all administrative immigration adjudications, unless a specific provision of law directs otherwise. *See* AAO Practice Manual (citing *Chawathe*, 25 I&N Dec. at 376); *see also, e.g.*, *Matter of Dhanasar*, 26 I&N Dec. at 889 & n.8; *Matter of Christos, Inc.*, 26 I&N Dec. at 539; *Matter of Skirball Cultural Ctr.*, 25 I&N Dec. at 805. And, the AAO has, after designating *Chawathe* as precedential, applied the preponderance standard to AWA no-risk determinations several times, apparently without remark. *See Castaneira*, 2026 WL 3438451, at *8 (collecting examples) (I-129F fiancé petitions). The agency's post-designation practice is thus inconsistent with Defendants' position that the AAO, in designating *Chawathe* as precedential, intended silently to exclude AWA no-risk determinations from *Chawathe*'s general rule.

Defendants next contend that the USCIS understood *Chawathe* to be applicable only in cases raising similar factual issues to *Chawathe* itself. *See* Dkt. 34 at 9. For support, they cite a memorandum from the Acting Deputy Director of USCIS that accompanied *Chawathe*'s initial issuance in 2006, which designated *Chawathe* as an adopted decision. *See id.* at 8; Divine Memorandum. As Defendants point out, the Divine Memorandum begins by describing *Chawathe*'s context-specific holding about the meaning of "American firm or corporation" before discussing its broader holding about the default evidentiary standard applicable to administrative immigration proceedings. *See* Divine Memorandum at 1. And they point out that the Divine Memorandum notes that *Chawathe*'s reasoning "may also be applied in determining the nationality of a publicly-traded foreign corporation" in certain circumstances and directs USCIS personnel "to follow the reasoning in [*Chawathe*] in similar cases." *Id.* Because a case

involving an AWA no-risk determination is not a "similar case[]" to one involving questions about a corporation's nationality, Defendants contended, the Court should interpret *Chawathe* more narrowly. Dkt. 34 at 9.

But even if Defendants' argument could overcome the agency's own decisions applying *Chawathe* in diverse factual contexts—including several AWA cases—their contention misses the mark in several additional respects. First, Defendants mischaracterize the Divine Memorandum, which includes a full paragraph describing how *Chawathe* "reemphasizes the preponderance of the evidence standard of proof applicable in *most* administrative proceedings," while reminding "USCIS adjudicators" that this general rule does not apply "where a higher standard is specified by law." *Id.* (emphasis added). The Divine Memorandum thus tracks *Chawathe* itself: the preponderance standard generally applies, but it does not apply where a different standard is specified by law. The fact that the Divine Memorandum ends with a one-sentence paragraph that directs agency personnel "to follow [*Chawathe*'s] reasoning in similar cases" cannot plausibly be read to limit *Chawathe* to its facts or to impose any other unexplained limitation on the decision's import.

And even if the Divine Memorandum could be read to suggest that Divine viewed the *Chawathe* decision as narrowly fact-bound—a proposition that is difficult to square with his assertion that the preponderance standard is "applicable in most administrative immigration proceedings"—it is the language of the *Chawathe* decision itself, rather than this nonbinding agency memorandum, that is controlling. As the Court has explained, *Chawathe*'s language is clear; the preponderance standard applies except where "a different standard is specified by law." Nor do Defendants even attempt to grapple with the fact that the Divine Memorandum accompanied *Chawathe*'s initial issuance as a USCIS adopted decision, not its elevation to

precedent four years later. Because the Divine Memorandum does not shed any light on the USCIS's later decision to designate *Chawathe* as precedent, any arguable limit that Divine might have placed on the agency's discretionary decision to apply the nonprecedential iteration of *Chawathe* as a matter of agency policy would carry little weight.

Defendants also contend that the Court's interpretation of *Chawathe* "preclude[s] Congress from actually allocating any discretion to USCIS" because Christian's claim amounts to an argument "that[,] unless Congress literally writes into a statute the clear and convincing evidence or beyond a reasonable doubt standard of proof, USCIS is absolutely bound to use the preponderance standard in adjudicating that type of application or petition." Dkt. 29 at 20. But concluding that the USCIS has bound *itself* to exercise its discretion in a manner consistent with *Chawathe* does not require the further conclusion that Congress alone may alter the standard of proof applicable to AWA cases. To the extent the USCIS and DHS seek to carve out AWA no-risk determinations from *Chawathe*'s default rule, they retain mechanisms for doing so. DHS could, for example, promulgate regulations establishing the evidentiary standard applicable to AWA no-risk determinations. *See* 8 U.S.C. § 1154(a)(l)(A)(viii)(I) (granting discretion to the Secretary of Homeland Security to "determine[]" that a family-based petitioner poses no risk); *id.* § 1103(a)(3) (granting the Secretary authority to "establish such regulations . . . he deems necessary for carrying out his authority" under the immigration laws). DHS or the USCIS might also supersede *Chawathe* with a precedential decision establishing a heightened standard of proof in AWA cases.[6] *See* 8 C.F.R. § 103.3(c) (designated precedents may be "modified or overruled by later precedent decisions").

---

[6] To be sure, the USCIS's avenues for changing *Chawathe* through binding agency precedent—as opposed to through a DHS regulation—may face some administrative hurdles. USCIS denials

Because *Chawathe* applies to family-based petitions involving petitioners convicted of offenses specified by the Adam Walsh Act, the USCIS "lacks discretion to disregard it" in adjudicating such petitions. *Christian I*, 2026 WL 2453585, at *3 (citing *Castaneira*, 138 F.4th at 549); *see also Steger v. Def. Investigative Serv. Dep't of Def.*, 717 F.2d 1402, 1406 (D.C. Cir. 1983) ("[A]n agency is under an obligation to follow, distinguish, or overrule its own precedent."). Despite Congress's decision to confer on the USCIS ultimate discretion in determining whether a Form I-130 petitioner poses a risk to the beneficiary relative, "if the agency itself chooses to bind itself to published procedures, this choice means that it must then 'exercise its own discretion' in accordance with its own 'existing valid regulations' and binding precedents." *Castaneira*, 138 F.4th at 551 (quoting *Accardi*, 347 U.S. at 268). Because

---

of family-based petitions like Christian's are typically appealed to the Board of Immigration Appeals ("BIA"), rather than to the AAO, which is the USCIS's own appellate review board. 8 C.F.R. § 204.2(a)(3). Because the BIA sits outside of the USCIS, however, the BIA has concluded that it lacks jurisdiction to review the USCIS's no-risk determinations in AWA cases, including the appropriate evidentiary standard for making such determinations. *See Matter of Aceijas-Quiroz*, 26 I&N Dec. at 300–01 (interpreting the AWA's language conferring "sole and unreviewable discretion" to the USCIS to determine whether a petitioner poses no risk to foreclose BIA review of USCIS determinations). And the USCIS's form providing petitioners with instructions for appealing USCIS decisions indicates that neither the BIA nor the AAO currently has jurisdiction to review AWA no-risk determinations. *See* U.S. Citizenship & Immigr. Servs., *Instructions for Notice of Appeal or Motion (Form I-290B)*, Dep't of Homeland Sec. 1 (May 31, 2024), https://perma.cc/4PT3-5336. It is therefore unclear that there exists a procedural avenue for obtaining a precedential administrative law decision that supersedes *Chawathe* in this specific context.

But even so, the scope of the AAO's jurisdiction depends entirely on the authority the Secretary of DHS has chosen to delegate to it. *See* Dep't of Homeland Sec. Delegation No. 0150.l(II)(U) (delegating to the USCIS authority to exercise appellate jurisdiction over matters described in 8 C.F.R. § 103.1(f)(3)(E)(ii) as in effect on February 28, 2003). Given that the AAO is a component of the USCIS, the entity to which the Secretary of DHS has delegated authority to adjudicate Form I-130 petitions in the first instance and to make no-risk determinations pursuant to the AWA, there is no apparent barrier to delegating to the AAO authority to establish an evidentiary standard for AWA no-risk determinations or to seeking approval from the Attorney General to designate that decision as binding precedent.

"*Chawathe* applies here," the USCIS "has cabined its own discretion through its own precedent, and it must exercise its discretion in the manner it itself sets out." *Id.*

Finally, the Court notes that this is not a case in which the agency, in adjudicating Christian's petition, acknowledged *Chawathe* and attempted to distinguish it. The Court expresses no view on whether the USCIS could, in a future administrative proceeding, reasonably explain why *Chawathe* does not apply to AWA no-risk determinations and thus decline to apply it without violating the *Accardi* principle. Because the agency neither distinguished *Chawathe* in its adjudication of Plaintiff's petition nor provided this Court a sound basis to conclude that *Chawathe* does not apply to Plaintiff's petition, the Court concludes that Plaintiff is entitled to summary judgment in his favor.[7]

[7] This Court ordinarily "will not void" an agency proceeding based on procedural error, including an *Accardi* violation, "if the error was harmless (or, equivalently, 'non-prejudicial')." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 106 (D.D.C. 1999) (collecting cases), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002). Although the D.C. Circuit has not clarified the precise standard for determining whether an *Accardi* violation is harmless, persuasive precedent establishes that the mere possibility that the agency will ultimately reach the same substantive conclusion on remand cannot render an *Accardi* violation harmless error. *See Vanover*, 77 F. Supp. 2d at 106; *Castaneira*, 2026 WL 3438451, at *12–14; *see also FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 589 (2025) ("[The harmless-error] principle, taken to its logical extreme, could permit a reviewing court to sustain a flawed agency decision whenever it finds that the agency would have reached the same result absent the initial error. Understood in that way, harmless error might swallow the remand rule."). Here, the Court concludes that the USCIS's application of the onerous beyond-any-reasonable-doubt standard to its no-risk determination was sufficiently prejudicial to warrant re-adjudication given "the immense amount of daylight between those burdens." *Castaneira*, 2026 WL 3438451, at *14; *see also supra* p. 17 (explaining that the preponderance standard in this context is "daunting," whereas the beyond-any-reasonable-doubt standard "borders on the insurmountable"); *cf. Chen v. Gen. Acct. Off.*, 821 F.2d 732, 741 & n.13 (D.C. Cir. 1987) (remanding to an agency for re-adjudication because "this court has emphatically rejected 'harmless error' arguments when the wrong burden of proof has been applied by the reviewing board"). The USCIS might (or might not) reach the same result, but Plaintiff is entitled to a decision that applies the correct standard of proof.

**C. Relief**

Because the Court concludes that Plaintiff is entitled to summary judgment, the Court will grant the ordinary remedy in APA cases such as these: vacatur of the USCIS's most recent February 25, 2026 decision denying Christian's Form I-130 petition and remand for the USCIS to re-adjudicate the petition in light of the Court's opinion.

Plaintiff also seeks several other forms of relief. His motion for summary judgment requests that the Court enter an order directing the USCIS to issue its final decision on his petition "as expeditiously as possible, irrespective of whether Defendants intend to seek appellate review;" directing "that any administrative or judicial stay of this Court's Remand Order pending appeal is [] precluded and denied;" and indicating that the Court will "retain absolute jurisdiction over this matter to enforce compliance." Dkt. 30 at 20.

This Court lacks authority to preclude the D.C. Circuit or Supreme Court from staying or reviewing its order, and the Court will deny Plaintiff's remaining requests in its discretion. *See Damrauer v. Spencer*, No. 18-cv-2950, 2019 WL 13253882, at *1 (D.D.C. Apr. 11, 2019). As other courts in this district have recognized, remanding for further proceedings without retaining supervisory jurisdiction is "[t]he norm" when vacating agency action, and the exercise of discretion to retain jurisdiction is "typically reserved for cases alleging unreasonable delay of agency action or failure to comply with a statutory deadline, or for cases involving a history of agency noncompliance with court orders or resistance to fulfillment of legal duties." *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 37, 41 (D.D.C.) (collecting cases). None of these factors appears to be present here, and the Court sees no reason to maintain jurisdiction over the USCIS's adjudication on remand. The Court also declines to set a particular timeline for the USCIS's re-adjudication of Christian's petition given that Christian has at no point alleged that the USCIS unreasonably delayed adjudicating any of his prior petitions, and the Court "cannot

say *in advance* that the amount of time the agency contemplates taking to reach a final determination will constitute 'unreasonable delay'" under either the APA or the Mandamus Act. *United Steelworkers of Am., AFL-CIO-CLC v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (emphasis in original). The Court recognizes that Christian's severe health problems counsel in favor of the USCIS endeavoring to resolve his petition as quickly as is feasible, but Christian must present that concern to the agency in the first instance.

Plaintiff next asks the Court to order the government to refund all administrative filing fees Plaintiff incurred when he refiled his applications in 2024 after the USCIS's 2023 denial and to award him reasonable litigation costs and attorney's fees under the Equal Access to Justice Act ("EAJA"). Dkt. 30 at 20. The Court finds no basis to grant the bulk of Plaintiff's requests. With respect to Plaintiff's request for reimbursement of the administrative filing fees he paid to the USCIS, Plaintiff fails to identify any statutory basis to award them. *Cf. Ardestani v. INS*, 502 U.S. 129, 139 (1991) (holding that EAJA does not authorize the recovery of expenses incurred in administrative deportation proceedings because such proceedings are not conducted under the formal adjudication procedures of 5 U.S.C. § 554). Plaintiff is also not entitled to recover attorney's fees under the well-established rule in this circuit that "*pro se* plaintiffs may not recover attorney fees under the EAJA." *Kooritzky v. Herman*, 178 F.3d 1315, 1321 (D.C. Cir. 1999).

Plaintiff is, however, entitled to recover costs under EAJA. EAJA provides that "a judgment for costs . . . may be awarded to the prevailing party in any civil action brought . . . against the United States" or a federal agency or officer. 28 U.S.C. § 2412(a)(1). Under D.C. Circuit precedent, a plaintiff "who secures a remand terminating the case and requiring further administrative proceedings in light of agency error is a prevailing party without

regard to the outcome on remand." *SecurityPoint Holdings, Inc. v. Transportation Sec. Admin.*, 836 F.3d 32, 39 (D.C. Cir. 2016). Plaintiff may, accordingly, serve and file a bill of costs in accordance with Local Civil Rule 54.1.

Finally, although Plaintiff's motion for summary judgment does not expressly ask for a declaratory judgment, *see* Dkt. 30 at 19–20, Plaintiff requested declaratory relief in his complaint, Dkt. 11 at 4, and he has attached to his summary judgment motion a proposed order including a declaratory judgment that "Defendants' application of the criminal 'beyond a reasonable doubt' standard of proof in adjudicating Plaintiff's Form I-130 petition is unlawful, contrary to binding agency precedent, and violates the Administrative Procedure Act," Dkt. 30 at 24. Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[I]t is well settled that a declaratory judgment always rests within the sound discretion of the court." *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980). And a request for declaratory relief "should be denied where it will not terminate the controversy or serve a useful purpose." *Winpisinger v. Watson*, 628 F.2d 133, 141 (D.C. Cir. 1980) (citation modified). Here, the Court will deny Plaintiff's request for declaratory relief as unnecessary given that the Court has already held that the USCIS erred in disregarding *Chawathe* in adjudicating his petition. *Cf. Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230, 246 (D.D.C. 2021) ("[T]he Court finds declaratory relief unnecessary since it has already held that Defendants violated RFRA by applying it to deny NCP's visa petition.").

**D. Motion for Relief from Rule 7(n)(1)**

Finally, the Court will deny as moot Defendants' pending motion for relief from the requirement under Local Civil Rule 7(n)(1) to file a certified list of the contents of the

administrative record, Dkt. 18. Because Defendants have filed the certified list required by Local Rule 7(n)(1), *see* Dkt. 28, the Court can no longer grant any meaningful relief on that request.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendants' motion for summary judgment, Dkt. 29, will **GRANT** in part and **DENY** in part Plaintiff's cross-motion for summary judgment, Dkt. 31, and will **VACATE** and **REMAND** the USCIS's February 25, 2026 denial of Christian's Form I-130 petition for further proceedings consistent with this decision.

The Court will also **DENY** as moot Defendants' motion for relief from the requirement under Local Civil Rule 7(n)(1) to file a certified list of the contents of the administrative record, Dkt. 18.

A separate order will follow.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 18, 2026